UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.G., *on behalf of minor* K.C. | Civil Action No: |
| *Plaintiff*, | 18-cv-2365 (PGS)(DEA) |
| v. | |
| HACKETTSTOWN PUBLIC SCHOOL DISTRICT, *et al.*, | **MEMORANDUM AND ORDER** |
| *Defendants*. | |

Presently before the Court is Defendants Hackettstown Public School District, Kevin O'Leary, Kathleen Matlack, and Jennifer Spuckes' Motion to Dismiss Plaintiff J.G.'s Amended Complaint Pursuant Federal Rules of Civil Procedure 12(b)(1) and (6). In her Complaint, Plaintiff asserts claims of: (1) hostile environment, contrary to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (2) discrimination, contrary to the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et. seq.*; (3) deprivation of her freedom of speech, contrary to 42 U.S.C. § 1983; and (4) violation of her constitutional right to free speech under Article I of the New Jersey Constitution. For the reasons discussed herein, Defendants' motion is denied.

## BACKGROUND

This case involves allegations by a high school student, who claims that she was discriminated against and that her constitutional rights were violated when the Hackettstown Public School District investigated and ultimately suspended the student for bullying.[1] Plaintiff

---

[1] At the outset, it should be noted that Defendants attach and cite to extraneous documents in their Brief in Support of their Motion to Dismiss. These documents are not referred to in the Complaint and, as such, the Court declines to consider them in addressing the present motion. *See In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (permitting a district

1

J.G. brings this matter on behalf of her minor daughter, K.C., a 17 year old student at Hackettstown High School. (Amended Complaint at ¶ 7). On March 8, 2017, K.C. was summoned to the office of Defendant Kevin O'Leary, Assistant Principal at Hackettstown High School. (*Id.* at ¶¶ 13, 17). Apparently, K.C. and other students were overheard having a conversation about guns and violence, which O'Leary wished to address. (*Id.*). O'Leary asked K.C. whether the conversation concerned the Black Lives Movement; when she told him that she was speaking about confrontations between police and African Americans, O'Leary responded, "all lives matter." (*Id.* at ¶¶ 19-21). According to K.C., she understood this to mean that she was not to discuss the Black Lives Movement while in school. (*Id.* at ¶ 25). Apparently, during this conversation O'Leary also remarked that some individuals are lucky to have light-colored skin and pass as Caucasian, which K.C. took as an insult, being that she is bi-racial. (*Id.* at ¶¶ 23-24). However, K.C. was not disciplined for this incident.

In any event, five days later, March 13, 2017, K.C. again drew the administrator's attention, this time for uttering a purportedly offensive slur. During K.C.'s English class, students were reading the play, "Blood Brothers," which has a scene where a corrupt police officer treats two suspects differently based on their economic status. (*Id.* at ¶ 26). As students were picking roles to play, K.C. volunteered to play the police officer, referring to the officer as "the pig." (*Id.* at ¶ 27). Her English Teacher, Defendant Matlack, reprimanded her for her choice of word and K.C. apologized. (*Id.* at ¶ 28). This being said, J.G. received a phone call a half hour later from Principal Matthew Scanlon, who explained to her that K.C. was the subject of a Harassment, Intimidation, and Bullying (hereinafter, "HIB") investigation, pursuant N.J.S.A. § 18A:37-13, *et seq.*. (*Id.* at ¶

---

court to consider material beyond the pleadings, without converting the motion to dismiss into a motion for summary judgment, where the document is "integral or explicitly relied upon in the complaint").

29). The basis of this investigation was K.C.'s use of the word "pig," which may have offended a student in the class whose father is a police officer. (*Id.* at ¶¶ 30-31). However, Plaintiff avers that the student was not present when she made the purportedly offensive slur. (*Id.* at ¶ 31).

Later that day, the school conducted an HIB investigation, which was attended by K.C., Defendant Jennifer Spuckes, an HIB Investigation specialist, and Defendant O'Leary. (*Id.* at ¶ 36). K.C. apparently recorded this meeting[2]. In any event, during the meeting, K.C. expressed to Defendants Spuckes and O'Leary that use of the word "pig" did not reflect her view of law enforcement and claimed that the classmate who may have been offended by the statement was not present when she uttered the word. (*Id.* at ¶¶ 39, 41). According to the Complaint, "Mr. O'Leary and Ms. Spuckes analogized the use of the term 'pig' to the use of the term 'nigger' and, later, the term 'fag.'" (*Id.* at ¶ 42). Apparently, both of them asked her how she would feel if someone called her by either name.[3] (*Id.* at ¶¶ 43-44). Despite objecting to these slurs, Defendants O'Leary and Spuckes continued to utter them in front of her. (*Id.* at ¶ 45). The two also criticized K.C. for continuing to discuss the Black Lives Movement, which they compared to someone overhearing a sexually degrading conversation between two teachers. (*Id.* at ¶ 48).

Following the investigation, Defendant O'Leary notified J.G. that they concluded that K.C. had committed an "unintentional HIB offense" and would serve a one day in-school suspension. (*Id.* at ¶ 52). These findings were later brought to the Board of Education on March 22, 2017; however, the Complaint does not state what findings or actions were taken thereafter. (*Id.* at ¶ 56). This being said, the parties do not dispute that Plaintiff did not appeal the initial HIB violation finding.

---

[2] The Court has not been provided a copy of the same.
[3] Apparently, K.C. is openly gay and felt that Defendants' use of the word "fag" was intentionally directed towards her.

3

## LEGAL STANDARDS

I. Rule 12(b)(1) Subject Matter Jurisdiction

Under Federal Rules of Civil Procedure 12(b)(1) a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]." 'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, No. 07-1797, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted).

Thus, consideration of the motion does not have to be limited; conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). However, "[w]here an attack on jurisdiction implicates the merits of plaintiff's

[f]ederal cause of action, the district court's role in judging the facts may be more limited." *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703, at *9 (internal citations omitted).

II. Rule 12(b)(6) Failure to State a Claim

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

## DISCUSSION

I. Lack of Standing

As an initial matter, Defendants contend that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), since Plaintiff failed to exhaust her administrative remedies. Plaintiff argues that because her present claims are unrelated to the HIB investigation, she was not required to assert these claims through the administrative process.

It is well-settled that "available and appropriate 'administrative remedies should be fully explored before judicial action is sanctioned.'" *Abbott v. Burke*, 495 A.2d 376, 391 (N.J. 1985) (quoting *Garrow . Elizabeth Gen. Hosp. & Dispensary*, 401 A.2d 533, 538 (N.J. 1979)). Under N.J.S.A. § 18A:6-9, the Commissioner of Education enjoys broad authority "to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws." "In cases '[w]here the controversy does not arise under the school laws, it is outside the Commissioner's jurisdiction even though it may pertain to school personnel.'" *Goode v. Camden City Sch. Dist.*, No. 16-3936, 2017 U.S. Dist. LEXIS 79301, at *6 (D.N.J. May 24, 2017) (quoting *Bd. of Educ. of E. Brunswick Twp. v. Twp. Council of E. Brunswick Twp.*, 223 A.2d 481, 485 (N.J. 1966)). Courts have held that NJLAD claims fall outside the Commissioner's jurisdiction. *See Hornstine v. Twp. of Moorestown*, 263 F. Supp. 2d 887, 900 (D.N.J. 2003); *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 895 (D.N.J. 1997) (Title VII, NJLAD, and breach of contract claims do not "arise under the school laws" for purposes of N.J.S.A. § 18A:6-9); *see also Balsley v. N. Hunterdon Bd. of Educ.*, 568 A.2d 895, 902 (N.J. 1990). In addition, "[t]here are no state exhaustion requirements for actions brought . . . under 42 U.S.C. § 1983 to enforce a federal constitutional claim." *Id.* (citing *Hochman v. Bd. of Educ.*, 534 F.2d 1094, 1097 (3d Cir. 1976)).

Here, contrary to Defendants' assertion, none of Plaintiff's claims "arise under the school laws" of New Jersey. While the allegations relate to the school's investigation into K.C.'s alleged bullying, the claims asserted arise under a federal statute, state law, United States Constitution, and the Constitution of the State of New Jersey. As such, because the Commissioner of Education did not have jurisdiction under N.J.S.A. § 18A:6-9 to hear Plaintiff's claims, Defendants' exhaustion argument is without merit.

II. Failure to State a Claim

*1. Federal and State Constitution Claims*

Defendants seek dismissal of Counts III and IV of Plaintiff's Complaint, which assert violations of her First Amendment rights under the United States and New Jersey Constitution, since K.C.'s comments are not constitutionally protected speech. Plaintiff claims that Defendants deprived her of her First Amendment right to free speech by prohibiting her from referring to a police officer as a "pig" and discussing the Black Lives Matter movement.

To sustain a claim under Section 1983, a plaintiff must demonstrate: (1) "that they have been deprived of a right 'secured by the Constitution and the laws' of the United States"; and (2) that the defendant "deprived them of this right acting 'under color of any statute'" or state law. *Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). Where, as here, Plaintiff's Section 1983 claim is based on a First Amendment violation, she must demonstrate that: "(1) she engaged in protected activity, (2) the defendant took an adverse action against her, and (3) the protected activity was a 'substantial or motivating factor' in the adverse action." *Thomas v. East Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 351 (D.N.J. 2014) (quoting *Swineford v. Snyder Cty.*, 15 F.3d 1258, 1270 (3d Cir. 1994)). In Counts III and IV, Plaintiff claims that K.C.'s First Amendment rights have been violated based on Defendants' restricting her "pig" comment and discussions regarding the Black Lives Matter movement.

It is well-settled that the First Amendment guarantees "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). This being said, "[w]hile school students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,' a school's need to control student behavior will necessarily result in limitations on student speech." *Walz v. Egg Harbor Twp. Bd. of Educ.*, 342 F.3d 271, 276

7

(3d Cir. 2003) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). "Restrictions on speech during a school's organized, curricular activities are within the school's legitimate area of control because they help create the structured environment in which the school imparts basic social, behavioral, and academic lessons." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 96 (3d Cir. 2009).

The basic framework for analyzing First Amendment claims, in the public school context, is set forth in four Supreme Court cases: *Tinker*, 393 U.S. at 506; *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988); and *Morse v. Frederick*, 551 U.S. 393 (2007). *Tinker* established the general rule that "regulation of student speech is generally permissible only when the speech would substantially disrupt or interfere with the work of the school or the rights of other students." *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 211 (3d Cir. 2001) (discussing *Tinker*, 393 U.S. at 503-08). "Since *Tinker*, the Supreme Court has identified three 'narrow' circumstances in which the government may restrict student speech even when there is no risk of substantial disruption or invasion of others' rights." *B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293, 304 (3d Cir. 2013). First, under *Fraser*, a public school may "categorically restrict vulgar, lewd, profane, or plainly offensive speech in schools, event if it would not be obscene outside of school." *Id.* (citing *Fraser*, 478 U.S. at 683, 685). Second, under *Hazelwood*, "a school may regulate school-sponsored speech (that is, speech that a reasonable observer would view as the school's own speech) on the basis of any legitimate pedagogical concern." *Saxe*, 240 F.3d at 214 (citing *Hazelwood*, 484 U.S. at 273). Finally, under *Morse*, a school may "restrict speech that 'a reasonable observer would interpret as advocating illegal drug use' and that cannot 'plausibly be interpreted as commenting on any political or social issue.'" *B.H.*, 725 F.3d at 304 (quoting *Morse*, 551 U.S. at 422, 403).

"The determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board." *Fraser*, 478 U.S. at 683. This makes sense, since these officials are in a better position to understand the "age, maturity, and other characteristics of their students far better than judges." *B.H.*, 725 F.3d at 308. While "discomfort" or "unpleasantness" does not justify restricting speech, "if a school can point to a well-founded expectation of disruption--especially one based on past incidents arising out of similar speech--the restriction may pass constitutional muster." *Saxe*, 240 F.3d at 212.

Here, Defendants cite to and rely on extraneous documents, beyond what is alleged in the Complaint, to support their contention that Plaintiff's "pig" reference is not protected speech. However, as noted above, at the Motion to Dismiss stage, the Court will only consider the factual allegations set forth within the four corners of the Complaint. When reviewing the Complaint, the Court is satisfied, at this stage, that Plaintiff's "pig" comment may constitute protected speech that was allegedly wrongfully infringed. While Defendants contend that her punishment was based on complaints of bullying and the school's overall concern for preventing disruptive behavior, there is nothing alleged in the Complaint to support same. Second, with regards to the Plaintiff's conversation surrounding the Black Lives Matter movement, it can hardly be argued that discussions involving political or social justice matters do not fall within the protections afforded under the First Amendment. *See, e.g., Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). In sum, at this stage, the Court limits its review to the factual allegations set forth in Plaintiff's Complaint. In doing so, the Court is satisfied that there are sufficient facts alleged supporting Plaintiff's free speech claims in Counts III and IV, and, therefore, denies Defendants' Motion to Dismiss on this basis.

*2. Hostile School Environment*

Defendants next seek dismissal of Counts I and II of Plaintiff's Complaint, wherein she asserts claims of hostile school environment under Title IV of the Civil Rights Act of 1964 and NJLAD.

a. Title VI

In Count I, Plaintiff avers that the March 22, 2017 investigation, wherein racial and homophobic slurs were directed towards her, created a hostile environment, contrary to Title VI, 42 U.S.C. § 2000d. Title VI states, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Under Title VI, "a plaintiff may sue a school for money damages for its failure to address a racially hostile environment." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011). "In order to establish liability based on a hostile environment for students under Title VI, a plaintiff must demonstrate 'severe or pervasive' harassment based on the student's race and 'deliberate indifference to known acts of harassment.'" *L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). "Discrimination under Title VI is not limited to being excluded from, or denied the benefits of, a particular school program"; rather, courts have understood Title VI to protect students from "an academic environment free from racial hostility." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665-66 (2d Cir. 2012) (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003)).

Here, contrary to Defendants' contention, Plaintiff's Complaint sufficiently sets forth allegations giving rise to a hostile environment claim. On two separate occasions, Plaintiff was subjected to what could be interpreted as racially charged slurs, for purposes of this motion. According to Plaintiff, on March 8, 2017, O'Leary remarked that some people are "lucky enough to have light enough skin to 'pass'" as Caucasian, which K.C. construed as comments directed towards her. (*Id.* ¶¶ 23-24). Second, throughout the March 13, 2017 HIB investigation, Plaintiff claims that both O'Leary and Spuckes used a racially charged slurs in front of her ("nigger"), despite her objections. These allegations constitute severe conduct that could give rise to a hostile environment. *See Castleberry*, 863 F.3d at 265-66 (holding that a supervisor's use of a racially charged slur in front of the plaintiffs and their co-workers constituted severe conduct). As such, for purposes of this motion, the Court is satisfied that Plaintiff has pled a plausible claim of a hostile environment; therefore, Defendants' motion to dismiss Count I is denied.

b. NJLAD

In Count II, Plaintiff claims that Defendants discriminated against her based on her sexual orientation, contrary to NJLAD, N.J.S.A. § 10:5-1, *et seq.* NJLAD provides:

> All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

N.J.S.A. § 10:5-4. These protections apply to public schools and extend to harassment based on a student's perceived sexual orientation. *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 915 A.2d 535, 549 (N.J. 2007). "[T]o state a hostile school environment claim under the NJLAD,

an aggrieved student must allege (1) 'discriminatory conduct that would not have occurred 'but for' the student's protected characteristic,' (2) 'that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and' (3) 'that the school district failed to reasonably address such conduct.'" *Thomas*, 998 F. Supp. 2d at 348 (quoting *L.W.*, 915 A.2d at 550). However, "isolated schoolyard insults or classroom taunts are [not] actionable." *Id.*

Here, Plaintiff relies principally on the HIB investigation, wherein O'Learly and Spuckes purportedly uttered homophobic slurs ("fag") towards K.C. As with Count I, the Court is satisfied, at this juncture, that there are sufficient facts pled to support Plaintiff's NJLAD claim. According to Plaintiff's Complaint, K.C. is a homosexual individual, O'Leary and Spuckes directed homophobic slurs towards her and no measures have been taken by the District to reprimand this type of behavior. As such, when construing the Complaint in Plaintiff's favor, Plaintiff asserts a cognizable claim under NJLAD for hostile environment.

This being said, to the extent these claims are asserted against Spuckes, O'Leary, and Matlack, individually, Plaintiff's NJLAD claim fails since she does not allege that these individuals aided or abetted the discriminatory conduct. Under NJLAD, "employers" are liable for acts of discrimination and hostile work environment. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 643 (N.J. 2008) (citing N.J.S.A. § 10:5-12(a)). In addition, NJLAD extends liability beyond employers to individuals who "aid, abet, incite, compel or coerce the doing of any of the acts" that create a hostile environment. *See Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 529 (D.N.J. 2014) (citing N.J.S.A. § 10:5-12(e)). As such, it follows that, "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can *only* arise through the 'aiding and abetting' mechanism that applies to 'any person.'" *Cicchetti v. Morris*

*Cty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008) (emphasis added). Here, being that the Complaint fails to assert that the aforementioned Defendants acted as aiders or abettors, Count II is dismissed as to these individuals.

*3. Punitive Damages*

Finally, Defendants seek to dismiss Plaintiff's request for punitive damages. "In order to recover punitive damages, the plaintiff must prove that the defendant's conduct was wantonly reckless or malicious." *Domm v. Jersey Printing Co.*, 871 F. Supp. 732, 739 (D.N.J. 1994) (citing *Grossman v. Club Med Sales*, 640 A.2d 1194, 1200 (N.J. Super. Ct. App. Div. 1994)). In addition, whether to award punitive damages "is a fact question which should be decided by a jury." *Id.*; *see also Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1135 (D.N.J. 1990). As such, given that this matter is at the pleadings stage, the Court finds it premature to resolve this issue at the present time. Therefore, Defendants' motion is denied without prejudice and may be renewed at a later point.

### ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 8th day of August, 2018,

**ORDERED** that Defendants' Motion to Dismiss (ECF No. 10) is DENIED; and it is further

**ORDERED** that Count II (NJLAD Hostile Environment) is GRANTED without prejudice as to Defendants O'Leary, Spuckes, and Matlack, and DENIED as to Hackettstown Public School District; and it is further

13

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's request for punitive damages is DENIED WITHOUT PREJUDICE; and it is further

**ORDERED** that Plaintiff has thirty days from the date of this Memorandum and Order to file an Amended Complaint.

_____
PETER G. SHERIDAN, U.S.D.J.